UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

McWOLLE DEVELOPMENT CORP.,

                                            Debtor.
-------------------------------------------------------------------x

NOT FOR PUBLICATION

Case No. 18-72623-reg

Chapter 11

## MEMORANDUM DECISION GRANTING RELIEF FROM STAY
### [Re: ECF No. 18]

Before the Court is a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) (the "Motion") by secured creditor, 195 Saint James Lender, LLC ("Saint James" or "Secured Creditor"). Saint James holds a first mortgage on the Debtor's, McWolle Development Corp. ("Debtor" or "McWolle"), real properties located at 195 Saint James Place, Brooklyn, New York ("Saint James Property") and 365 Macon Street, Brooklyn, New York ("Macon Street Property") (together, the Saint James Property and the Macon Street Property are referred to herein as the "Properties"). The Saint James note and mortgage at issue was originated in August 2016 and the Debtor defaulted shortly thereafter.[1] Saint James instituted foreclosure proceedings in January of 2017 and a foreclosure judgment was entered in March of 2018. The Debtor filed this chapter 11 petition on April 19, 2018, on the eve of foreclosure sale. According to Saint James, the Debtor has made no debt service payments during the pendency of this case, nor is the Debtor paying carrying costs for the Properties. Saint James claims that it is under-secured in that the total value of the Properties was $4,550,000 as of the petition date ($3,250,000 attributed to the Saint James Property, and $1,300,000 attributed to the Macon Street Property), and the current balance of the secured debt exceeds that amount.

---

[1] The documentation provided to the Court evidence a single note and a single mortgage covering both Properties. (Motion, ECF No. 18, Exhs. A, B).

The Debtor opposes the Motion and argues that Saint James is adequately protected by an equity cushion in the Properties which the Debtor intends to use to support a larger refinance (with other properties owned by affiliated entities) and reorganization of the debt.  First, the Debtor argues that Saint James has overstated the balance of the secured debt by about $700,000, and the actual mortgage balance should be close to $4,000,000.  Second, the Debtor asserts that the total value of the Properties is $6,200,000 ($4,680,000 attributed to the Saint James Property, and $1,520,000 attributed to the Macon Street Property).  If the Debtor's valuation is correct, there would be approximately $1,200,000 in equity to support the Debtor's plans to refinance.  Thus, the Debtor's opposition to the Motion hinges on a finding that there is an ample equity cushion.

On October 18, 2018 the Court held an evidentiary hearing on valuation.  At the outset, Saint James called a witness who testified that as of the hearing date, the balance of the secured debt was $4,944,650.00 (Transcript of October 18, 2018 Hearing at 62 5:12, ECF No. 44, (hereinafter "Tr.")).  The Debtor's counsel did not cross examine this witness.  Saint James then called its appraiser, Mr. Kevin Walsh, to testify in support of its appraisals for the Properties.  This discussion will focus first on the Saint James Property.

Mr. Walsh testified that the appraisal he prepared for the Saint James Property in May, 2018 was based on an inspection of the property done in July of 2016 (in connection with the appraisal done at the time of the original loan).  The 2018 appraisal states that it is an extraordinary assumption that the conditions at the Saint James Property had not changed since 2016.  The appraisal was based on an income approach theory wherein the potential purchaser would be looking to purchase this property as an investment, as opposed to a potential owner/occupier purchaser.  The appraisal was based in part on the fact that at the time of the

2016 inspection, there was a 15-year fixed rent lease encumbering the largest unit of the building's three units (Tr. at 75 9:12). Mr. Walsh testified that the long-term lease at a fixed rate had a negative impact on value, but no testimony was elicited on direct or cross examination as to the extent of that impact (Tr. at 74 7:9).[2] He admitted on cross-examination that he was unsure if there were tenants currently occupying the units. Mr. Walsh was qualified as an expert, and the Secured Creditor's appraisal indicating a fair market value of $3,250,000 for the Saint James Property was admitted into evidence without objection.

The Debtor claims that the Saint James Property is worth $4,680,000, and it called an appraiser, Mr. Temitope Ojetunde, to testify. On direct examination, the Debtor's counsel attempted to question Mr. Ojetunde as to an appraisal that he did not prepare. Saint James' counsel objected. Since Mr. Ojetunde did not author the appraisal for the Saint James Property, he could not authenticate it, and the Secured Creditor's objection was sustained. *See* Fed. R. Evid. 901(a) and (b)(1). As a result the Debtor failed to admit any evidence of the value of the Saint James Property, and at the conclusion of the evidentiary hearing the only evidence in the record of the fair market value for the Saint James Property indicates a value of $3,250,000.[3]

As for the Macon Street Property, the Court finds it unnecessary to resolve the dispute. The competing appraisals are only $220,000 apart, and the Court will assume, for purposes of

---

[2]     The Debtor's principal testified that the fixed rent lease that was in place in 2016 is no longer in force, and in fact, the Saint James Property is currently vacant. Nonetheless, no other testimony or evidence was ever presented that would impugn the Secured Creditor's appraisal as admitted into evidence.

[3]     In addition, although Mr. Ojetunde, was questioned as to his qualifications, Debtor's counsel failed to have him qualified as an expert.

this Motion, that the Debtor's valuation at $1,520,000 for the Macon Street Property is correct.[4]

With this assumption, the total value of the Properties as of the April 19, 2018 petition date was

$4,770,000.

Now, turning to the Motion, section 362(d)(1) provides that the court shall grant relief

from stay "for cause, including the lack of adequate protection of an interest in property . . ."

"Cause" is not defined in the Code, however, courts in the Second Circuit have recognized it to

be "a broad and flexible concept that must be determined on a case by case basis."  *See In re*

*AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013) (citing *Spencer v. Bogdanovich (In re*

*Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002)).  Failure to make post-petition payments to a

secured lender constitutes "cause" to lift the stay.  *See e.g.*, *In re Elmira Litho, Inc.*, 174 B.R.

892, 903 (Bankr. S.D.N.Y. 1994) (listing cases).  The Debtor does not dispute that it has not

made post-petition payments to Saint James and therefore the Court finds that Saint James has

established a *prima facie* case that "cause" exists to lift the stay.

Upon the movant's prima facie showing of cause to lift the stay, the burden shifts to the

Debtor to show that the movant's interest in the property is adequately protected.  *See In re*

*Hinchliffe*, 164 B.R. 45, 48 (Bankr. E.D. Pa. 1994).  Here, the Debtor claims that the Secured

Creditor's position is adequately protected by an ample equity cushion.  However, having found

the value of the Properties to be $4,770,000 as of the petition date, the Debtor would now have to

satisfy its burden of proving that the mortgage balance is far less than that.  As Judge Bernstein

indicated in *In re Elmira Litho*, an equity cushion may provide adequate protection if it is

---

[4]      The Debtor's appraisal was admitted into evidence (Debtor's Exh. 1), without objection.  The
Secured Creditor's appraisal, which was also admitted, would set value at $1,300,000) (Secured
Creditor's Exh. E).

sufficiently large enough to ensure the secured creditor's entire claim can be recovered at the completion of the case.  *See In re Elmira Litho*, 174 B.R. at 904.

The balance of the Secured Creditor's claim as of the petition date, as set forth in the proof of claim filed on July 24, 2018, was $4,695,095.97.  The Debtor has not objected to the proof of claim.  However, in opposition to this Motion, Debtor's counsel asserts, in his own affidavit, that the claimed amount should be reduced to approximately $4,000,000 because approximately $600,000 of the loan was never funded.  He attaches a copy of a closing statement as proof.  Putting aside for now that the Debtor's counsel's assertions are not supported by an affidavit signed by anyone with personal knowledge of the factual allegations he puts forth, the Debtor does not address the fact that there is a foreclosure judgment, dated March 6, 2018, which determined as of August 19, 2017, that the total amount owed to Saint James was $4,050,047.79. The Debtor did not appeal the foreclosure judgment.  That judgment is now final, non-appealable, and *res judicata* as to the amount of the secured debt as of August 19, 2017.  The Saint James proof of claim in the amount of $4,695,095.97 includes the $4,050,047.79 set by the foreclosure judgment, plus default rate interest from August 19, 2017 to the judgment date ($545,406.44), and statutory interest thereafter ($48,272.43), plus legal fees ($40,845.31) and other miscellaneous costs.  The Debtor has failed to assert any dispute as to these charges.  Thus, the record of this case establishes that as of the petition date there was about $75,000 in equity to protect the Secured Creditor's interest in the Properties.  However, whether the equity on the petition date was $75,000 or far more than that, a debtor must make post-petition payments on over-secured debt to avoid erosion of the secured creditor's equity position.  11 U.S.C. § 361 (adequate protection).

At the time the Secured Creditor filed the instant Motion, the secured debt had increased to $4,760,135.73 as a result of the Debtor's failure to make post-petition payments to the Secured Creditor.  Further, the Secured Creditor put in testimonial evidence that the balance of the debt is now $4,944,650.  Therefore the Secured Creditor's equity position has completely eroded during the pendency of this case due to the Debtor's failure to make adequate protection payments.  This establishes cause to lift the stay under section 362(d)(1).

For all of these reasons, the Court finds that the Motion should be granted.  Counsel for the Secured Creditor is directed to settle an order on the Debtor and the Office of the United States trustee, pursuant to E.D.N.Y. LBR 9072-1.  The chapter 11 status conference [ECF No. 10], the motion by the Office of the United States trustee to dismiss this case or convert it to chapter 7 [ECF No. 25], and Secured Creditor's motion for contempt [ECF No. 34], will be restored to this Court's calendar for further hearings on January 14, 2019 at 1:30 pm.



**Dated: Central Islip, New York**
       **December 10, 2018**

       **Robert E. Grossman**
**United States Bankruptcy Judge**

6